# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| 1 VISION AVIATION PLLC,<br><br>Plaintiff,<br><br>vs.<br><br>SILVER AIRWAYS, LLC,<br><br>Defendant. | No. 19-cv-4021-MAR<br><br>**ORDER REGARDING DEFENDANT'S MOTION FOR ABSTENTION AND STAY** |

This matter comes before the Court pursuant to the Motion for Abstention and Stay filed June 14, 2019 by Defendant Silver Airways, LLC ("Defendant"). (Doc. 11.) Plaintiff 1 Vision Aviation, PLLC ("Plaintiff") timely filed a resistance on June 28, 2019. (Doc. 13.) Defendant filed its reply thereto on July 5, 2019. (Doc. 14.) The matter is fully submitted. Oral argument is unnecessary.

## I.   INTRODUCTION

Plaintiff provides maintenance and repair services for aircraft from its Sioux City headquarters. Plaintiff is an Iowa professional limited liability company.[1] Defendant operates a domestic airline from its principal place of business in Orlando, Orange County, Florida. (Doc. 11-3 at 1.) In 2017, Defendant began flying its aircraft to and from Plaintiff's Sioux City facility for maintenance and repair. The terms of the parties' agreement are disputed. It appears the parties' interaction resulted in the estimates and invoices attached to Plaintiff's Complaint. (Docs. 1-1, 1-2.) At some point, a dispute arose regarding how much Plaintiff was owed by Defendant. Plaintiff also performed

---

[1] The allegations of paragraphs 1 through 8 of Plaintiff's Complaint appear to establish diversity jurisdiction under 28 U.S.C. Section 1332(a)(1). Defendant has not answered the complaint and has not challenged subject matter jurisdiction. The allegations of Defendant's complaint in the Florida case tend to support the complete diversity of citizenship. (Doc. 11-3.)

1

some work at Defendant's Florida facility.[2] At some point after the relationship soured, Plaintiff attempted to place liens on Defendant's aircraft.[3]

The parties' interaction has now culminated in two lawsuits: this one ("the federal lawsuit") and one pending in Florida state court ("the Florida lawsuit"). How this dispute and the two lawsuits came into being bears elaboration.[4] The work described in Plaintiff's estimates and invoices all took place in Sioux City, Iowa where Defendant delivered the aircraft. (Doc. 13-1 ¶ 12; Doc. 11-3 ¶ 8.) Defendant supplied parts to be used by Plaintiff in performing its work. (Doc. 11-3 ¶ 10; Doc. 13-1 ¶ 12.) Defendant had a right to retain unused, removed, and salvaged parts. (Doc. 13-1 ¶ 12; Doc. 11-3 ¶ 10.) Plaintiff completed the work on the aircraft, which were then returned to Defendant's facility in Florida. (Doc. 11-3 ¶ 11; Doc. 13-1 ¶ 12.) In 2017, Plaintiff's personnel performed repair and maintenance work at Defendant's Orlando, Florida facility. (Doc. 11-3 ¶ 13; Doc. 13-1 ¶ 18.) In late 2017, Plaintiff commenced its collection efforts with respect to the invoices. (Doc. 13-1 ¶ 20; Doc. 11-3 ¶ 12.)

On April 15, 2019, a collection agency hired by Plaintiff contacted Defendant. (Doc. 13 ¶ 22; Doc. 11-1 ¶ 124). On May 13, 2019, Plaintiff's legal department emailed

---

[2] The parties dispute whether this Florida work by Plaintiff is important to the Court's analysis or merely a red herring. This additional work does not figure into Plaintiff's complaint. Defendant suspects it was omitted for a tactical advantage. Plaintiff asserts it was omitted because Plaintiff has already been paid.

[3] The parties dispute whether the liens are relevant or more red herrings.

[4] This decision requires me to consider facts not appearing of record. Local Rule 7(b)(4) requires parties to file affidavits or other sworn materials in support of those facts. Plaintiff has submitted an affidavit from its CEO Jimmy Sponder. Defendant has not submitted an affidavit. Fortunately, while the parties dispute the facts within their lawsuits, for the purposes of abstention analysis the nuts and bolts of who filed what, when and where are straightforward. To a large extent, such "undisputed facts" can be ascertained by comparing Mr. Sponder's affidavit with the complaint filed in the Florida lawsuit to see where the parties agree. Where facts are unclear or I have reason to question facts that are not supported by an affidavit, I will so note.

Defendant seeking an alleged balance due of $482,884.50, threatening a lawsuit, and threatening to enforce liens against the aircraft. (Doc. 14-1.) Defendant claims it filed the Florida lawsuit on May 14, 2019 as a result of the April 15, 2019 collection communication. (Doc. 11-1 ¶¶ 12-13 .) The federal lawsuit was filed on May 22, 2019. (Doc. 1.) Defendant was served with the federal lawsuit on May 24, 2019. (Doc. 5.) Plaintiff was served with the Florida lawsuit on June 4, 2019. (Doc. 11-5.) Defendant served written discovery on Plaintiff with the service of summons in the Florida lawsuit for which answers may be required by August 19, 2019. (Doc. 13.)

The Complaint in the federal lawsuit seeks money damages for breach of contract because Defendant has allegedly not paid amounts for repairing and maintaining Defendant's aircraft as shown in the invoices and estimates. (Doc. 1.) Defendant's Complaint in the Florida lawsuit alleges breach of contract based on Plaintiff's alleged failure to return parts to Defendant that were not used by Plaintiff in servicing Defendant's aircraft. (Doc. 11-3 ¶ 24.) Defendant's Florida complaint also seeks an accounting of the parts Defendant claims to have provided for use by Plaintiff in servicing the aircraft. (Doc. 11-3 ¶¶ 26-32.) Finally, the Florida complaint seeks a judgment declaring Plaintiff is not entitled to further compensation and has no valid liens on the aircraft. (Doc. 11-3 ¶¶ 33-45).

The affidavit of Jimmy Sponder supports, *inter alia,* Plaintiff's allegations regarding its limited contact with Florida and that Plaintiff's employees who would be potential witnesses reside in or near the State of Iowa. (Doc. 13-1 ¶¶ 21-26.)

## II. DISCUSSION

### A. *Colorado River Abstention*

Defendant contends this Court should abstain from deciding this action under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). In *Colorado River*, the Supreme Court outlined the principles that control this Court's

abstention where there are pending parallel state court proceedings. *Id.* at 817. The Court held that, "[g]enerally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* (citation and quotation marks omitted). This rule "stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.* Accordingly, "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Id.* at 818. The Court should weigh several considerations when requested to abstain due to pending state proceedings:

> It has been held, for example, that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts.... In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums.

*Id.* (citations omitted). "No one factor is necessarily determinative." *Id.* "[A] carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Id.* at 818–19 (citation omitted). "Only the clearest of justifications will warrant dismissal." *Id.* at 819.

In *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* the United States Supreme Court explained two additional factors that should be addressed under *Colorado River* abstention: whether federal or state law controls the dispute and the adequacy of the state forum to protect the federal plaintiff's rights. 460 U.S. 1, 23–27 (1983).

The Eighth Circuit Court of Appeals has explained that, "[a]s a threshold matter, . . . there must be pending parallel state and federal court proceedings before *Colorado River* is implicated." *Fru–Con Constr. Corp. v. Controlled Air, Inc.,* 574 F.3d 527, 535

(8th Cir. 2009) (citing *In re Burns & Wilcox, Ltd.*, 54 F.3d 475, 477 (8th Cir. 1995), *limited on other grounds by Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 710–11 (1996)). The Eighth Circuit observed that "[p]recedent establishing a comprehensive definition of 'parallel proceedings' for purposes of *Colorado River* abstention is scarce in this circuit." *Id.* "Although the [Eighth Circuit] has decided several cases involving such proceedings, none has discussed the specific elements of parallelism." *Id.* "The prevailing view is that state and federal proceedings are parallel for purposes of *Colorado River* abstention when substantially similar parties are litigating substantially similar issues in *both* state and federal court." *Id.* (emphasis in original). The Eighth Circuit concluded that "[t]his circuit requires more precision" than other circuits. *Id. Fru-Con* held,

> The pendency of a state claim based on the same general facts or subject matter as a federal claim and involving the same parties is not alone sufficient. Rather, a substantial similarity must exist between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court. This analysis focuses on matters as they currently exist, not as they could be modified. Moreover, in keeping with the Supreme Court's charge to abstain in limited instances only, jurisdiction must be exercised if there is any doubt as to the parallel nature of the state and federal proceedings.

*Id.* (citations omitted.)

"When any doubt exists as to the parallel nature of concurrent state and federal proceedings, the district court cannot utilize *Colorado River* to refuse its jurisdiction." *Cottrell v. Duke,* 737 F.3d 1238, 1245 (8th Cir. 2013) (citing *Fru–Con,* 574 F.3d at 535). Moreover, "when a party raises an exclusively federal claim, *Colorado River* [abstention] is inappropriate." *Id.* at 1248.

If the proceedings are parallel, the federal court may divest itself of jurisdiction "only when . . . exceptional circumstances warrant abstention." *Fru–Con,* 574 F.3d at

5

534 (citing *Colorado River,* 424 U.S. at 817–18. The Eighth Circuit identified "[s]ix non-exhaustive factors [that] have been developed to determine whether . . . exceptional circumstances warrant abstention":

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*Id.* (quoting *Mountain Pure, LLC v. Turner Holdings, LLC,* 439 F.3d 920, 926 (8th Cir. 2006)). These factors "are not intended to be exhaustive, nor are they to be mechanically applied." *Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coops., Inc.,* 48 F.3d 294, 297 (8th Cir. 1995). They should be applied pragmatically "to advance the 'clear federal policy' of avoiding piecemeal adjudication." *Id.* (quoting *Moses H. Cone,* 460 U.S. at 16).

> In examining these factors, "the balance [is] heavily weighted in favor of the exercise of jurisdiction." And:
>> we emphasize that our task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction.

*Id.* (quoting *Moses H. Cone,* 460 U.S. at 25–26) (emphasis in original).

**B.    *The Lawsuits Are Parallel***

Before turning to the six *Colorado River/Moses H. Cone* factors, the Court must first determine whether the proceedings are parallel. *Id.* Plaintiff agrees with Defendant

that the proceedings are parallel. (Doc. 13 at 10.) Nevertheless, Defendant's explanation of why the cases are parallel bears quoting at some length:

> In the present case, the Florida Lawsuit and Federal Lawsuit are parallel proceedings because the subject matter of the claims are substantially similar and the Florida Lawsuit will fully dispose of the claims presented in the Federal Lawsuit. The Florida Lawsuit and the Federal Lawsuit involve identical parties-Silver Airways and 1 Vision-and each assert claims arising out of the performance of the agreement between the parties for 1 Vision to perform maintenance and repair services on the Aircraft. For instance, in the Florida Lawsuit, Silver Airways seeks a declaration that it does not owe any additional money to 1 Vision for the services 1 Vision provided. In the Federal Lawsuit, 1 Vision claims the exact opposite, alleging that Silver Airways owes 1 Vision additional compensation based on Invoices submitted by 1 Vision Aviation for its services.
>
> Furthermore, the lawsuits are parallel because the resolution of the Florida Lawsuit will fully dispose of the claims asserted by 1 Vision in the Federal Lawsuit. 1 Vision's claim that it is owed additional funds is subsumed within Count I of the Florida Lawsuit, such that it is a defense and/or compulsory counterclaim to Counts I and III of the Florida Lawsuit pursuant to the Florida Rules of Civil Procedure. *See* Fla. R. Civ. P. 1.170 ("A pleading must state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, provided it arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction."). As such, 1 Vision must assert this claim in the Florida Lawsuit and will likely also assert it as a basis for one or more affirmative defenses, including the defense of setoff. A finding in the Florida Lawsuit that 1 Vision is not entitled to additional compensation from Silver Airways, whether by granting Silver Airways' claim for declaratory relief or denying 1 Vision's compulsory counterclaim for additional compensation (if asserted), will fully and completely dispose of 1 Vision's claim asserted in this case, i.e., that it is owed additional compensation from Silver Airways.

(Doc. 11-1 at 8.)

*Fru-Con* admonishes courts to focus on matters as they currently exist. *Fru–Con,* 574 F.3d at 535. Defendant's analysis focuses rather too much on how the actions might be modified to be more inclusive and thus provide more evidence the actions are parallel.[5] Nevertheless, two points can readily be drawn from Defendant's description of the cases. First, regardless of how these predictions play out "there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *Id.* at 534. The claim presented in the federal lawsuit (i.e., Plaintiff's claim it was not fully paid for its services) will likely fully dispose of in the Florida lawsuit. At present, Plaintiff's entitlement to payment is before the Florida court as the subject of Defendant's declaratory judgment action and before this Court as Plaintiff's action for breach of contract. Thus, the actions are parallel.

Second, and more broadly, whether in Florida or in this Court, the instant action is a garden variety breach of contract action between two parties. Whether it is dressed up as an action for accounting or one for declaratory judgment, the case involves two parties, each of which claims the other committed a breach.

C.  *Assessing the Colorado River factors*

   1.  *Whether there is a res over which one court has established jurisdiction*

The parties agree there is no res. (Doc. 11-1 at 10; Doc. 13 at 11.) The parties disagree on how to weigh the absence of a res. Defendant simply states the absence of a res makes this *Colorado River* factor inapplicable. (Doc. 11-1 at 10.) Plaintiff states the absence of a res "point[s] toward abstention." (Doc. 13 at 11) (quoting *Village of Westfield v. Welch's,* 170 F.3d 116, 122 (2nd Cir. 1999).) Because "a federal court may divest itself of jurisdiction "only when . . . exceptional circumstances warrant

---

[5] Plaintiff's argument has a similar tendency where it suggests the Court should predict its success on the merits of three motions to stay or dismiss the Florida lawsuit. (Doc. 13 at 16.) I decline to make any prediction on the outcome of those motions and, therefore, do not factor them into my abstention analysis.

8

abstention," I find that this factor does not weigh into the ultimate decision of whether there are "exceptional circumstances" to justify abstention. *Fru–Con,* 574 F.3d at 534 (citing *Colorado River,* 424 U.S. at 817–18); *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 297.

### 2. *The inconvenience of the federal forum*

Defendant claims the Northern District of Iowa is an inconvenient forum but has not provided much support for this assertion. Defendant has not filed an affidavit, but Plaintiff's federal complaint contains allegations that to some degree support the notion that this district would be inconvenient for Defendant. For example, Defendant is a Delaware limited liability company with a principal place of business in Florida and Defendant is an airline operating in Florida. It is also apparent from Mr. Sponder's affidavit that Plaintiff performed some work at Defendant's Florida facility. (Doc. 13-1.) Regarding the respective convenience of the forums, Plaintiff makes a more convincing argument. Defendant argues, without explanation of the particulars, "the majority of witnesses and evidence pertinent to this action are located in Florida." (Doc. 11-1 at 11.) Plaintiff, on the other hand, provides an affidavit of its CEO, supplying many reasons to support its contention that the Northern District of Iowa is the more convenient forum. The work was performed in Iowa by employees located in and near Iowa. (Doc. 13-1 at 5-8.) It is reasonable to conclude, given the nature of the allegations, that a dispute over whether parts were used and whether Plaintiff was paid for its work would involve these employees. Defendant does not identify its personnel involved in the matter or explain how they would be inconvenienced.

Because Defendant is a commercial airline that chose to have repairs made on its aircraft in Sioux City, Iowa, it is difficult, with no support in the record, to conclude Florida is a more convenient forum. As this Court held in *Kingland Sys. Corp. v. Colonial Direct Fin. Grp., Inc.*, Defendant "bears the burden on the present motion,

[and] has done no more than demonstrate that the relative inconvenience of the forum would be shifted from one side and one set of witnesses to the other side and another group of witnesses. 188 F. Supp. 2d 1102, 1117 (N.D. Iowa 2002) (citations omitted). This factor weighs against abstention.

### 3. *Whether maintaining separate actions may result in piecemeal litigation.*

The third factor focuses on the undesirability of piecemeal litigation. This is "the predominant factor" in the calculation because "[t]he policies underlying *Colorado River* abstention are 'considerations of wise judicial administration, . . . conservation of judicial resources and comprehensive disposition of litigation.'" *Mountain Pure, LLC v. Turner Holdings, LLC,* 439 F.3d 920, 927 (8th Cir 2006) (quoting *Colorado River,* 424 U.S. at 817) (internal quotation marks and brackets omitted). To avoid piecemeal litigation, however, courts favor "the most complete action." *Id.*

As mentioned above, the dispute between the parties is essentially a breach of contract action. Defendant's Florida complaint frames the breach of contract in the negative; i.e., it seeks a declaration that Plaintiff is *not* entitled to any further payment. The federal action is more complete in that it must necessarily decide this issue as it also determines whether Plaintiff is entitled to a money judgment. The Florida complaint does seek an accounting of parts used by Plaintiff and a declaration that Plaintiff has no valid liens. Plaintiff suggests the parts accounting can be disregarded as specious or *de minimis*. The affidavit of Mr. Sponder states that the issue of unreturned parts boils down to a broken fire extinguisher and a damaged wing component of no value. (Doc. 13-1 at 3.) This tends to show the parts issue may ultimately be *de minimis*. More importantly, it seems likely that the issue will be addressed in the federal action in some fashion, perhaps as a counterclaim or a set-off.

With respect to the liens, Plaintiff comes close to conceding it has no lien in this somewhat cryptic footnote:

> While Silver Airways also refers to a lien on the aircraft, asking the court in the Florida Lawsuit to declare its non-existence (Doc. 11-3 ¶ 43, 45), it is a non-issue. 1 Vision's Complaint here does not seek enforcement of any liens securing the amounts owed on the Invoices. *Leuchtenmacher v. Farm Bureau Mut. Ins. Co.*, 460 N.W.2d 858, 860 (Iowa 1990) ("[A] party must litigate all matters growing out of its claim at one time rather than in separate actions."). The allegations relating to a lien, which would have to be separately litigated in either forum, do not provide a reason to abstain for the purpose of allowing the Florida court to declare that Silver Airways has a defense to a claim that is not being made. *See Fru-Con Const. Corp.*, 574 F.3d at 539.

(Doc. 13 at 15 n.10.)

Defendant contends it was notified in March of 2018 that the FAA has rejected Plaintiff's liens for a variety of reasons, including that they were untimely asserted and were unlawful because the aircraft were no longer in Plaintiff's possession. (Doc. 11-1 at 5.) The fact that Plaintiff has not sought to enforce these liens in this Court is some reason to suspect that the validity of the liens is not a central issue. Defendant's references to the liens and the parts in the Florida complaint do not, therefore, make that lawsuit more complete.

The real concern about piecemeal litigation in this case mirrors the concern in *Godfrey v. Branstad*, where the court stated:

> Both the state and federal proceedings assert substantially the same equal protection and due process claims against the same defendants, requiring both courts to consider the same evidence against substantially the same law. Requiring the parties to litigate parallel claims simultaneously in two different courts creates the potential for duplicative litigation, opens the door for inconsistent rulings, and adds unnecessary time and cost to the parties and the courts. Permitting this case to proceed expeditiously in one court avoids these risks. As such, this factor weighs strongly in favor of abstention.

56 F. Supp. 3d 976, 984 (S.D. Iowa 2014). As in *Godfrey,* this case presents "substantially the same" claim whether it is pursued as Plaintiff's claim for breach of

11

contract or as Defendant's for declaration it did not breach. The contract, declaratory judgment, and accounting claims are all founded on state law. It is probable the courts will consider the same evidence. Thus, the two pending cases present some risk that the parties will conduct duplicative litigation and invite inconsistent rulings.

Despite this risk, this Court may divest itself of jurisdiction "only when . . . exceptional circumstances warrant abstention." *Fru–Con,* 574 F.3d at 534 (citing *Colorado River,* 424 U.S. at 817–18). This pronouncement is far from a directive to this Court to abstain in every case where the parties have chosen different venues to pursue their claims. Because the federal lawsuit is more complete but there is risk of duplicative litigation, this factor points in two different directions. Nevertheless, because of the caution in *Fru-Con*, this Court will not abstain solely on this basis. A contrary result would expand the cases where this Court is required to abstain beyond "exceptional circumstances." Therefore, this factor presents no basis to abstain.

### 4. *Which case has priority*

The Florida lawsuit was filed May 8, 2019. The federal lawsuit was filed eight days later. The federal lawsuit was served on Defendant on May 24, 2019. The Florida lawsuit was served on Plaintiff eleven days later. The Florida lawsuit was served with discovery requests. Unlike the Federal Rules of Civil Procedure, the applicable Florida procedural rules permit the service of discovery with a complaint.

*Moses H. Cone* stated,

> This factor, as with the other *Colorado River* factors, is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand. Thus, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.

460 U.S. at 21 (1983); *see also Fru-Con,* 574 F.3d at 534.

Plaintiff argues that "first-to-file" is less important than first to obtain jurisdiction. (Doc. 13 at 17)(citing *Colorado River,* 424 U.S. at 818.) Moreover, Plaintiff contends, under Florida law, Plaintiff first obtained jurisdiction over Defendant by effecting service upon it.

Both parties appear to have scrambled to their chosen courthouses after Plaintiff's May 13, 2019 collection email was sent to Defendant. (Doc. 14-1.) Defendant was quicker with filing, but Plaintiff was quicker with service. Discovery was served first by Defendant, but there is little evidence that any significant disclosure or discovery has been undertaken in either action. This is not a case where litigation has proceeded in one forum to a significant degree and then one party seeks relief in a different forum as happened in *Godfrey. See* 56 F. Supp. 3d at 984 (plaintiff waited approximately one year to file in federal court). Rather, both cases have apparently only progressed to the juncture where each court has been requested to stay or dismiss by the out-of-state party as evidenced by the instant motion and Plaintiff's motion to dismiss or stay the Florida lawsuit. (Doc. 13-3.) Thus, this factor provides little basis for this Court to abstain from exercising its jurisdiction in this case.

### 5. *Whether state or federal law controls*

I agree with the parties that the claims are all governed by state law.[6] Defendant asserts this factor is neutral in the abstention analysis. It is more precise to state, as this Court did in *Kingland Sys. Corp.:*

---

[6] Even the lien issue may be governed by state law:

> The Supreme Court's decision in *Philko Aviation, Inc. v. Shacket* established three principles. First, an interest in aircraft which is never recorded with the FAA will have no effect against the rights of any third parties who lack actual notice of the interest. Second, all state laws permitting undocumented or unrecorded transfers to affect the interests of third parties are preempted by the federal Act. Third, as between competing

13

> [I]n this diversity action, none of the parties' claims or counterclaims is governed by federal law. On the other hand, the presence of state law issues will weigh in favor of abstention only in rare circumstances, and even where a case is governed entirely by state law, that fact does not provide a reason for abstention, and in such cases, the governing law factor cannot be afforded any significant weight. This factor is all but irrelevant in the present context, where the claims in both fora are governed by state law (Florida and New York), which either forum would be competent to apply.

188 F. Supp. 2d at 1120 (citations and internal quotation marks omitted). Neither party has provided any basis to conclude that one court or the other would be better suited to apply state law. Thus, this factor presents no basis to abstain.

### 6. *The adequacy of the state forum to protect the federal plaintiff's rights*

The parties agree that the Florida forum is adequate to protect Plaintiff's rights. Defendant argues this factor is neutral. Again, it is more precise to say, as in *Kingland Sys. Corp.*,

> [T]he court finds that this factor certainly does not rise to the level of an "exceptional circumstance," because both fora would almost always be adequate when only state-law questions are at issue in a state action and a federal diversity action. Again, even in diversity actions, "exceptional circumstances" are required to warrant *Colorado River* abstention, and this court concludes that the absence of any federal claims in either lawsuit is simply not such an "exceptional circumstance."

*Id.* at 1121 (internal citation omitted).

### 7. *Additional considerations*

Defendant points to other considerations that it believes weigh in favor of abstention. First, it asserts Plaintiff was "reactive and tactical" in its decision to file the

---

interests which are recorded with the FAA, state law determines priorities. *Compass Ins. Co. v. Moore*, 806 F.2d 796, 798 (8th Cir. 1986).

federal lawsuit after it learned of Defendant's Florida lawsuit.[7] Defendant cites Eighth Circuit precedent approving consideration of "whether the federal or state suit is filed . . . for a vexatious, reactive or tactical reason." *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 299 (citations omitted).

However, Defendant has not shown the federal lawsuit was filed for a reactive or tactical reason. Plaintiff's May 7, 2019 demand letter made clear Plaintiff intended to sue if Defendant did not pay. (Doc. 14-1.) Rather than simply reacting to the Florida lawsuit, this evidence shows Plaintiff was considering a lawsuit before Defendant sued in Florida. One could argue that Defendant's decision to file a declaratory judgment action in Florida was reactive to that demand letter. One could also argue that Defendant made a tactical decision to file in the court most convenient for it. Whether a lawsuit should be considered reactive cannot be based on mere timing of the lawsuits because that simply leads back to the "first-to-file" rule. Nor can the determination of whether a lawsuit is tactical be made based on a party's decision to file a lawsuit in a forum more convenient for that party. It may be true in virtually every case that a plaintiff attempts to file in the forum it finds most favorable whether based on convenience or other factors. Without more, it would be difficult to call such conduct tactical forum shopping.

Whether the filing of a lawsuit is reactive or tactical must require something more to make it weigh in the abstention analysis. *Samuels Grp., Inc. v. Hatch Grading & Contracting, Inc.*, presents such a case:

> Initially, Samuels appeared content to litigate this dispute in the State Court. This is evident, at least in part, from its attempt to intervene in the State Proceedings and compel Hatch to arbitrate. Ultimately, the State Court granted a stay so the parties could arbitrate the matter. However, after receiving the Award, Samuels sought to extricate itself from the State Proceedings and bring its dispute with Hatch to this court. Courts have looked unfavorably upon similar tactics. *See Vulcan Chem. Tech.,*

---

[7] Defendant does not claim that filing by Plaintiff was vexatious.

15

> *Inc.,* 297 F.3d at 343 ("This case was gladly litigated by both parties in California and gladly arbitrated there before an agreed-upon arbitrator . . . When Vulcan lost the arbitration and was ordered to pay a large award, it undertook a strategy to obtain a second opinion on the same issue from the district court."); *NitGen,* 2004 WL 2303929, at *6 ("The Court agrees that where a party changes court systems the issue of forum shopping is raised. . . . NitGen has apparently become dissatisfied with the state court and now seeks to try its hand in federal court."); *Hinman,* 2006 WL 358073, at *3 ("[I]t appears that Petitioner is seeking a more favorable ruling from this Court than Petitioner received in state court."). While the precise procedural background of these cases varies to some extent from the instant action, the underlying rationale is equally applicable here. The court finds that it is appropriate to consider the possibility that Samuels filed the instant action in an effort to avoid potentially adverse rulings in the State Court. This factor weighs in favor of abstention.

697 F. Supp. 2d 1042, 1056 (N.D. Iowa 2010) (ellipses in original). The "reactive and tactical" behavior worthy of weight in *Samuels* was the plaintiff's reaction to an adverse ruling with the tactic of pursuing relief in another forum to avoid that ruling. *Samuels* involved more than a race to the courthouse where one party arrived several days later. As such, the additional factors Defendant has asserted do not affect the abstention analysis.

### 8. *Weighing the factors.*

The only factor that possibly weighs in favor of abstention under *Colorado River* is the risk of inconsistent results. As previously mentioned, this possibility – which could arise whenever two parallel cases are commenced in separate forums – is not sufficient to constitute the "exceptional circumstances" that warrant abstention. *Colorado River* does not require the Court to abstain merely because a parallel state case is commenced at approximately the same time. *Godfrey* presents a helpful comparison. The court found a "likelihood of piecemeal litigation;" however, it also found the implication of important issues of state law and the fact that the state court proceeded for a year before plaintiff filed the federal action also favored abstention. *Godfrey*, 56 F. Supp. 3d at 986. In this

case, possibility of piecemeal litigation is not, by itself, enough to support abstention. The other factors considered all weigh against abstention or are, at most, neutral.

### D.     *Defendant's request the Court stay this action to control its docket*

Defendant urges the Court to stay this action pursuant to the "power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). The cases cited by Defendant to support this request are not persuasive. *Contracting NW., Inc. v. City of Fredericksburg, Iowa*, involved Section 3 of the Federal Arbitration Act, which permits a court to stay "any suit . . . brought in any of the courts of the United States upon any issue referable to arbitration." 713 F.2d 382, 387 (8th Cir. 1983) (citing 9 U.S.C. § 3.) In *Contracting NW, Inc.,* both parties were not subject to an agreement to arbitrate. However, one of the parties was embroiled in arbitration with a third party involving questions of fact in common with the case before the court. *Id.* at 383-86. The court held the Federal Arbitration Act "is broad enough to permit the stay of litigation between nonarbitrating parties as long as that lawsuit is based on issues referable to arbitration under an arbitration agreement governed by the Arbitration Act." *Id.* at 387. Under those circumstances "the district court had the inherent power to grant the stay in order to control its docket, conserve judicial resources, and provide for a just determination of the cases pending before it." *Id.* (citations omitted.)

Defendant also relies on *Rosenbauer Am., LLC v. Advantech Serv. & Parts, LLC*, 437 F. Supp. 2d 1081 (D.S.D. 2006). *Rosenbauer* declined to abstain under *Colorado River* because the cases were not parallel. *Id.* at 1084. The suits involved the same parties, but the federal lawsuit involved the breach of a dealership agreement and the state lawsuit involved the enforceability of an alleged settlement agreement. *Id. Rosenbauer* reasoned that a ruling on enforceability of the settlement agreement would

17

make the breach of contract claim moot. *Id*. In the absence of *Colorado River* parallelism, staying litigation to allow a state court to determine if the matter has already been settled was justified. *Id*. In discussing *Rosenbauer*, a Northern District of Illinois decision noted the party resisting a stay "cite[d] no examples of courts denying a stay where a motion to enforce a settlement in a state court could dispose of the claims in the federal suit." *Freed v. Friedman*, 215 F. Supp. 3d 642, 654 (N.D. Ill. 2016). The facts of *Rosenbauer* do not pertain to the case at bar.

Thus, although the Court has the power to control its docket by staying this action, unlike *Contracting NW, Inc*. and *Rosenbauer*, the Court has not been given a sufficient justification to do so.

### III.   CONCLUSION

The Court finds that the Florida lawsuit and federal lawsuit have the requisite "parallelism" to permit *Colorado River* abstention. However, the Court concludes that the *Colorado River/Moses H. Cone* factors weigh against abstention. Defendant has not shown the "clearest of justifications" for this Court to surrender its jurisdiction in favor of the parallel state action. Moreover, the Court finds no basis to exercise its inherent power to stay this matter. Therefore, Defendant's motion (Doc. 11) is **denied.**

IT IS SO ORDERED

Dated this 8 day of August, 2019.

_____
Mark A. Roberts, Magistrate Judge
Northern District of Iowa